UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MITCHELL RIVERA,

                                        Plaintiff,

                                                                5:16-CV-00997
v.                                                              (NAM/TWD)

FEDERAL BUREAU OF INVESTIGATION, et al.

                                        Defendants.
_____

APPEARANCES:

MITCHELL RIVERA
Plaintiff pro se
117 Irving Ave.
Liverpool, New York 13088

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

The Clerk has sent to the Court for initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)

two complaints filed in one action at the request of pro se Plaintiff Mitchell Rivera.  (Dkt. Nos. 1

and 1-1.)  The first complaint alleges claims for violation of Plaintiff's civil rights under *Bivens*

and 42 U.S.C.§ 1983 and has been submitted on a complaint form entitled "Complaint for

Violation of Civil Rights."  (Dkt. No. 1.)  The second complaint contains essentially the same

allegations of wrongdoing by Defendants and has been submitted on a complaint form entitled

"Complaint and Request for Injunctive Relief."[1]  (Dkt. No. 1-1.)

Plaintiff has also filed two applications to proceed *in forma pauperis* ("IFP application")

_____

[1]  The Court will treat the two complaints as a single pleading for purposes of this initial
review.

one short form and one long form    which have been consolidated by the Court for consideration.  (Dkt. Nos. 2 and 2-1.)  For the following reasons, the Court will grant Plaintiff's consolidated IFP application (Dkt. Nos. 2 and 2-1), and recommend that Plaintiff's complaints be dismissed on the following grounds: (1) sovereign immunity; (2) failure to state a claim; and (3) frivolous claims, and that the dismissal be in part with prejudice and in part without prejudice.

## I.    IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).  After reviewing Plaintiff's consolidated IFP application, the Court finds that Plaintiff meets this standard.  Therefore, Plaintiff's consolidated IFP application (Dkt. Nos. 2 and 2-1) is granted.

## II.    LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution

should be exercised in ordering *sua sponte* dismissal of a pro se complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds pro se, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A pro se complaint should not be dismissed "without

giving leave to amend at least once when a liberal reading of the complaint gives any indication

that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir.

1999) (citation and internal quotation marks omitted). An opportunity to amend is not required

where "the problem with [the plaintiff's] causes of action is substantive" such that "better

pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.     PLAINTIFF'S COMPLAINTS

### A.     Allegations of Wrongdoing

In his two complaints, Plaintiff has sued the Federal Bureau of Investigation ("FBI"); FBI

Director James B. Comey, Jr. ("Comey"); FBI Special Agent in Charge Andrew Vale ("Vale");

and FBI Assistant Directors Diego Rodriguez ("Rodriguez") and George Venizelos

("Venizelos"); and Eric T. Schneiderman, New York State Attorney

General/NYPD/SuffolkPolice/Onondaga Sheriff ("Schneiderman").[2] (Dkt. Nos. 1 at 1-4; 1-1 at

1-3.) Plaintiff claims that Defendants are "involved directly or indirectly in a supervisory

position in the deprivation of [his] rights" in violation of *Bivens* and 42 U.S.C. § 1983. (Dkt. No.

1 at 6.)

Plaintiff has alleged that since at least 2006, and possibly since 1999, he has been under

investigation by the FBI for insurance fraud arising out of a $50,000 insurance policy on his late

mother's life under which he was the sole beneficiary. (Dkt. Nos. 1 at 7-8; 1-1 at 6.)

---

[2] Plaintiff has not indicated in the complaints whether he is suing the individual
defendants in their individual or official capacity or both. In light of Plaintiff's pro se status, for
purposes of initial review, the Court will deem Plaintiff's *Bivens* claim against Comey, Vale,
Rodriguez, Venizelos, and § 1983 claim against Schneiderman to have been asserted against
them in both their individual and official capacities.

According to Plaintiff, investigation of the alleged fraud fell under the jurisdiction of the FBI because of multi-state involvement. (Dkt. No 1-1 at 6.) Plaintiff has alleged that in 2008, an unidentified FBI agent told him that they would get him. *Id.* at 7.

Plaintiff, who has described himself as "Afro Puerto Rican," claims that the FBI probably already knew his family because his father was the first Puerto Rican Director at Citibank; his maternal uncles had cartel ties and served time in the 1980s, and one uncle was being probed by the FBI for murder; and Plaintiff has friends who are associated with famous musicians like Eminem and 50 Cent. (Dkt. No. 1 at 6-7; 1-1 at 7-8.)

Plaintiff, who makes music, claims that unidentified FBI agents have: (1) illegally blocked two songs he had at SONY in 2011, and he has still not received them; (2) tried to get information to investigate 50 Cent or Plaintiff's lawyer without telling Plaintiff anything; (3) started hacking Plaintiff's on-line business because it was doubling profits too quickly in 2008 and forced Plaintiff out of business; (4) rerouted his internet search results; (5) admittedly posed as tenants, roommates, and landlords in order to illegally torture Plaintiff; (6) threatened and harassed artists so that they would not purchase anything from Plaintiff without notice; (7) deleted Plaintiff exes' and friends' Facebook accounts over and over again and blocked his Facebook messages and friend requests strategically, while having the police play dumb; (8) told prospective employers Plaintiff committed fraud so they would not hire him; (9) somehow been involved in Plaintiff being unable to get his cavities taken care of the by his dentist; (10) illegally blocked Plaintiff's paid advertising and confiscated business materials; (11) assaulted Plaintiff; (12) had Plaintiff illegally removed from stores and blocked him from suing Dollar General and other stores for illegally aiding the FBI; (13) and attempted to force Plaintiff to admit guilt for

something he did not do.  (Dkt. No. 1 at 7-8; 1-1 at 7-9.)

Plaintiff claims that Defendant New York State Attorney General Eric Schneiderman is responsible for overseeing civil rights for New York State.  (Dkt. No. 1 at 5.)   Plaintiff has alleged that his "suit originates with a (sic) FBI probe from 06 - Present so state officials have been under FBI instruction in the states he has resided in since then," including New York.  *Id*.

### B.    Claimed Injuries

Plaintiff claims that he has been injured in the following ways by the alleged wrongdoing of the Plaintiffs: (1) has sleep apnea, poor sinus drainage, and un-removed cavities as a result of being forced to see a different dentist; (2) been blacklisted in the music business by Defendants' lies and destruction of businesses, and of songs he had with former SONY artists; (3) destroyed his relationship with his daughter, a girl from high school, and his sister; (4) forced exes not to talk to him by deleting their social media accounts over and over; (5) made his entertainment lawyer go from wanting to represent him to blocking Plaintiff without the two even talking; (6) illegally froze his on-line activities causing irreparable harm; (7) destroyed Plaintiff's relationships with several cousins, close friends, ex-girl friends, and his brother and father by forcing Plaintiff to talk to an agent who is supposed to represent a murdered figure, without notice; and (8) pretending to involve Plaintiff in drug and internet security probes that do not involve him.  (Dkt. Nos. 1 at 7; 1-1 at 10.)

### C.    Relief Requested

Plaintiff has not specifically requested relief in the form of money damages in either complaint.  (*See* Dkt. Nos. 1 at 8; 1-1 at 11.)   Plaintiff has requested injunctive relief directing unidentified FBI agents to: (1) stop living in the same building as Plaintiff or posing as his

landlord; (2) stop tampering with his on-line business, advertising, and communication; (3) stop

talking behind his back; (4) give Plaintiff his mother's Freedom of Information Act ("FOIA")

records; (5) stop talking to Plaintiff's potential employers; (6) stop preventing Plaintiff from

obtaining a part-time job as a result of the stress due to the FBI agents and their false fraud probe;

(7) stop interfering with Plaintiff and any industry without notice; (8) stop trying to prevent

Plaintiff from complaining about law enforcement to doctors in order to make suing the FBI

agents more difficult; and (9) stop blocking Plaintiff from obtaining counsel to represent him on

the claims being pursued in this action. *Id.*

## IV. ANALYSIS

### A. Official Capacity *Bivens* Claims

In his civil rights complaint (Dkt. No. 1), Plaintiff has alleged claims for violation of his

constitutional rights against Federal Defendants the FBI, FBI Director Comey, Vale, Rodriguez,

and Venizelos under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).[3] (Dkt. No. 1.)

More specifically, Plaintiff alleges that Defendants violated his constitutional rights under the

First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, and Tenth Amendments to the Constitution.[4] *Id.*

---

[3] Plaintiff has also alleged claims under 18 U.S.C. §§ 241, 242, 245, 247, and 249; 15 U.S.C. §§ 2, 13; and 17 U.S.C. §§ 5, 11. The civil rights provisions of Title 18 of the U.S. Code (sections 241-248) do not allow private rights of action. *See Tsabbar v. Booth*, 293 F. Supp. 2d 328, 335 (S.D.N.Y. 2003). Even with the most liberal construction, neither of Plaintiff's complaints can be construed to state a claim under Title 15 of the U.S.C., which deals with antitrust violations, or Title 17 of the U.S.C., which deals with copyright. The Court finds Plaintiff's claims under Titles 15, 17, and 18 of the U.S.C. to be frivolous and recommends dismissal with prejudice as against all Defendants.

[4] Plaintiff alleges the same violation of his constitutional rights in both complaints. (Dkt. Nos. 1 at 5; 1-1 at 4.) The Second Amendment protects the right to keep and bear arms. U.S. Const. amend. II. There are no allegations in either of Plaintiff's complaints alleging infringement on that right by Defendants. The Third Amendment prohibits the quartering of

"A *Bivens* action is a judicially-created remedy designed to provide individuals with a cause of action against federal officials who have violated their constitutional rights," *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (citing *Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981)). "The only remedy available in a *Bivens* action is an award of monetary damages from defendants in their individual capacities." *Id.* Since a court may award only money damages on a *Bivens* claim, claims for injunctive relief are unavailable. *See Kurzberg v. Ashcroft*, 619 F.3d 176, 179 n.2 (2d Cir. 2010); *Higazy,* 505 F.3d at129.

*Bivens* money damages claims may not be brought against the United States, federal agencies, or federal agents in their official capacities. *See FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994) (confirming that under *Bivens*, a "direct action against the Government [is] not available," and further declining to recognize a "*Bivens*-type cause of action directly against a federal agency"); *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Robinson v. Overseas*

---

soldiers in any house during time of peace without consent of the owner, U.S. Const. amend. III, and is clearly irrelevant to Plaintiff's claims. The Eighth Amendment protects against excessive bail and fines and the infliction of cruel and inhuman punishments. U.S. Const. amend. VIII. The protection from cruel and inhuman punishment applies only to convicted prisoners and is, therefore, inapplicable to Plaintiff. *See Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989). The Ninth Amendment, which provides that the enumeration of certain rights in the Constitution shall not be construed to deny or disparage others retained by the people, is a rule of construction and does not give rise to individual rights. U.S. Const. amend IX; *Jenkins v. C.I.R.*, 483 F.3d 90, 92 (2d Cir. 2007). The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Const. amend. X. There is no private right of action under the Tenth Amendment. *See Lopez-Mejia v. Lynch*, No. 1:16-CV-549 (TSB), 2016 WL 2937479, at * 3 n.6 (S.D. Ohio, Western Division May 20, 2016). The Court therefore recommends that Plaintiff's claims under the Second, Third, Eighth, Ninth, and Tenth Amendments to the Constitution be dismissed with prejudice.

*Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (a *Bivens* action "must be brought against the federal officers involved in their individual capacities. Under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent. Because an action for money damages against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are barred under the doctrine of sovereign immunity, unless such immunity is waived.") (citing *Meyer*, 510 U.S. 471).

Because sovereign immunity is jurisdictional in nature, the Court recommends that Plaintiff's *Bivens* claims be dismissed with prejudice against the FBI, and against Comey, Vale, Rodriguez and Venizelos in their official capacities, for lack of subject matter jurisdiction. *See Wake v. United States*, 89 F.3d 53, 57 (2d Cir. 1996) (sovereign immunity is jurisdictional in nature).

### B.    Individual Capacity *Bivens* Claim

Plaintiff has failed in both of his complaints to identify the FBI agents he claims committed unconstitutional acts against him. (*See generally* Dkt. Nos. 1 and 1-1.) Plaintiff alleges that the individual Federal Defendants violated his constitutional rights under *Bivens* because they were involved "directly or indirectly in a supervisory position in the deprivation of rights to force an outcome, use me against my will, and cover up contract violations." (Dkt. No. 1 at 6.)

A *Bivens* cause of action has been found to be the federal analog of a suit against state officials under 42 U.S.C. § 1983. *Iqbal*, 556 U.S. at 675-76. "Because vicarious liability [respondeat superior] is inapplicable to *Bivens* . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution.

9

*Id*. at 676. Supervisory officials are not liable under *Bivens* based solely on the alleged misconduct of their subordinates.[5] *Sash v. U.S.*, 674 F. Supp. 2d 531, 543 (S.D.N.Y. 2009).

Plaintiff's civil rights complaint is devoid of factual allegations describing any personal involvement of Defendants Comey, Vale, Rodriguez, and Venizelos with respect to any of the alleged violations of Plaintiff's constitutional rights described in the complaint. Moreover, Plaintiff is not seeking monetary damages, the only remedy available in a *Bivens* action. *See Higazy*, 505 F.3d at 169. Therefore, the Court recommends that Plaintiff's *Bivens* claims against Defendants Comey, Vale, Rodriguez, and Venizelos be dismissed. However, in light of Plaintiff's pro se status, and because the Court cannot rule out the possibility that Plaintiff may decide to seek monetary damages from the federal Defendants in their individual capacities, the Court recommends that dismissal of the *Bivens* claims against those Defendants be without prejudice, and that Plaintiff be granted leave to amend to set forth facts plausibly showing the personal involvement of the individual Federal Defendants in the violation of his constitutional rights.

---

[5] Prior to *Iqbal*, the Second Circuit held that personal involvement of supervisory defendant may be shown by evidence that "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *see also Vazquez-Mentado v. Buitron*, 995 F. Supp. 2d 93, 96 (N.D.N.Y. 2014) (finding *Colon* factors applicable to *Bivens* claims). The Second Circuit has thus far expressly declined to determine whether *Iqbal* heightened the requirements for showing a supervisor's personal involvement with regard to certain constitutional violations. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). The Court need not reach the issue of *Iqbal's* impact on *Colon* because Plaintiff has not plead the Federal Defendants' personal involvement even under *Colon*.

**C.     Section 1983 Claim Against Schneiderman**

The sole allegation against New York State Attorney General Schneiderman in Plaintiff's civil rights complaint is that he is the attorney general overseeing civil rights for the State of New York, and his suit "originates with a (sic) FBI probe from 06-Present so state officials have been under FBI instruction in the states I have resided in since then."  (Dkt. No. 1 at 5.)  Section 1983, which itself creates no substantive rights, is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights and rights under the laws of the United States. *See Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  State officials have immunity under the Eleventh Amendment for § 1983 claims for money claims asserted against them in their official capacity.[6]  *See Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993).

The Eleventh Amendment does not bar official capacity claims seeking prospective relief. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984); *Adler v. Pataki*, 204 F. Supp. 2d 384, 390 (N.D.N.Y. 2002) .  However, the defendant must have the authority to perform the act required.  *Adler*, 204 F. Supp. 2d at 390.  The injunctive relief Plaintiff seeks in his civil rights actions involved alleged wrongful acts of unidentified FBI agents, and there are no allegations in the complaint suggesting that Schneiderman, who has allegedly been under FBI instruction, has the authority to enforce the injunctive relief Plaintiff is seeking against the FBI, Comey, Vale, Rodriguez and Venizelos.  (*See* Dkt. No. 1.)

As with *Bivens* claims, a plaintiff alleging an individual capacity claim under § 1983 must

---

[6] There are no allegations in the complaints plausibly suggesting that Plaintiff has a claim against Schneiderman in his individual capacity, or that Plaintiff intended to assert such a claim.

show personal involvement by the Defendant in the alleged violation of the plaintiff's constitutional rights. *See Colon*, 58 F.3d at 873 ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") Plaintiff has alleged no facts in his complaint showing any personal involvement by Schneiderman, supervisory or otherwise, in the alleged violation of Plaintiff's constitutional rights by unidentified FBI agents.[7] Therefore, the Court recommends that Plaintiff's § 1983 claim against Defendant Schneiderman be dismissed.

If the Court were to limit its consideration solely to the single allegation in the civil rights complaint arguably involving Schneiderman that New York State officials were under FBI jurisdiction when Plaintiff resided in New York, it would recommend dismissal with prejudice. However, given the conclusory allegation in the complaint for an injunction that there was a joint federal/state probe of Plaintiff regarding his alleged insurance fraud (Dkt. No. 1-1 at 6), the Court recommends that the dismissal against Schneiderman be without prejudice.

### D. Claim for Injunctive Relief Against Federal Defendants

As discussed above, injunctive relief is not available on *Bivens* claims. *Higazy* 505 F.3d at 129. In light of the liberality with which pro se complaints are to be construed, the Court is compelled to assess whether the waiver of sovereign immunity set forth in Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, applies to Plaintiff's claim for injunctive relief against the federal defendants inasmuch as he is alleging violation of his constitutional rights, thereby

---

[7] In his complaint requesting an injunction, Plaintiff alleges that "[t]he persons I listed as defendants [including Schneiderman] oversee people both at a federal and state level via joint federal/state probes." (Dkt. No. 1-1 at 6.) That conclusory assertion is insufficient to state a claim for supervisory liability against Schneiderman under any of the *Colon* factors. *See Colon*, F.3d at 873.

giving the federal court subject matter jurisdiction under 28 U.S.C. § 1331.

Section 702 provides in part that

> A person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. The Second Circuit has read § 702 "as a waiver of immunity where a proper action is brought under 28 U.S.C. § 1331," the general federal question jurisdiction statute. *Sprecher v. Graber*, 716 F.2d 968, 973-74 (2d Cir. 1983); *see also Beller v. Middendorf*, 632 F.2d 788, 797 (9th Cir. 1980) (section 702 waives sovereign immunity not only for suits brought under the APA, but also for constitutional claims brought under the general federal question jurisdiction statute), *overruled on other grounds, Witt v. Department of Air Force*, 527 F.3d 806 (9th Cir. 2008). Because the waiver under § 702 extends only to suits asking for other than monetary relief, the waiver does not apply where monetary relief is sought in addition to equitable relief. *See Polanco v. U.S. Drug Enforcement Admin.*, 158 F.3d 647, 652 (2d Cir. 1998) ("Section 702 waives sovereign immunity in an action seeking equitable relief from wrongful agency action, except where . . . the action also seeks monetary relief.") The waiver is also unavailable where there "is an adequate remedy at law." *Id*. As noted above, Plaintiff has not asked for monetary relief in either complaint.[8] (Dkt. Nos. 1 and 1-1.)

---

[8] If Plaintiff were granted leave to amend his complaint to plead a *Bivens* claim for money damages against the Federal Defendants, and he thereafter filed an amended complaint seeking money damages, he would not be entitled to the waiver of sovereign immunity under §

Courts have recognized the availability of the § 702 waiver in actions against the FBI and its officials for various alleged constitutional violations. *See, e.g., Platsky v. C.I.A.*, 953 F.2d 26 (2d Cir. 1991) (court found it not beyond doubt that plaintiff could prove no set of facts in support of his claim for interference with the constitutional right to free association based upon the CIA. and FBI depriving him of the opportunity to join a political organization of his choice and harassing him in applications for government services, on his job, and in every day life, and on one occasion approaching plaintiff's landlord to have him evicted from his home); *Raz v. Lee*, 343 F.3d 936 (8th Cir. 2003) (recognizing waiver of sovereign immunity for plaintiff's claim for injunctive relief prohibiting the FBI from continuing violation of his constitutional rights by surveillance activities based upon his expression of unpopular political beliefs, including tapping his phone and placing electronic tracers in his car; issuing alerts to other law enforcement agencies; causing him to be ostracized by issuing warnings to stores and other businesses he frequented; hog-tying and beating him; turning his acquaintances into spies against him; causing him severe stress and deterioration of health; and destroying relationships with friends).

Plaintiff has alleged the violation of his rights under the First, Fourth, and Fifth Amendments in both of his complaints. (Dkt. Nos. 1 at 5; 1-1 at 4.) However, other than conclusory allegations that the individual Defendants have been acting in a supervisory capacity with regard to the wrongdoing alleged in Plaintiff's complaints, the complaints are devoid of allegations showing specific involvement or wrongdoing against the Federal Defendants from 2006 to the present. Moreover, the allegations in the complaints are all entirely too vague and conclusory as to such things as time frames; persons and businesses involved; businesses

702 for purposes of his claim for injunctive relief. *Polanco,* 158 U.S. at 652.

harmed; and factual detail regarding the circumstances of the various instances of alleged wrongdoing, to state a plausible claim for injunctive relief for the alleged violation of his constitutional rights. *See Twombly*, 550 U.S. at 570 (conclusory statements without any supporting factual allegations are insufficient to state a claim).

Therefore, the Court recommends that Plaintiff's claim for injunctive relief against the Federal Defendants for violation of his constitutional rights be dismissed for failure to state a claim, and that the dismissal be without prejudice.

## V. CONCLUSION

Based upon the foregoing, the Court has made the following recommendations: (1) Plaintiff's claims under the Second, Third, Eighth, Ninth, and Tenth Amendments and under 15 U.S.C. §§ 2, 13; 17 U.S.C. §§ 5, 11; and 18 U.S.C. §§ 241, 242, 245, 247, and 249 be dismissed with prejudice; (2) Plaintiff's *Bivens* claim against the FBI and the Federal Defendants in their official capacities be dismissed with prejudice; (3) to the extent, if at all, Plaintiff may have intended to assert a *Bivens* claim for money damages against Comey, Vale, Rodriguez, and Venizelos in their individual capacities, the claims be dismissed without prejudice; (4) Plaintiff's claim for injunctive relief against the FBI, Comey, Vale, Rodriguez, and Venizelos for violation of his constitutional rights be dismissed without prejudice; and (5) Plaintiff's § 1983 claim against Defendant Schneiderman be dismissed without prejudice for failure to state a claim.

Mindful of the Second Circuit's instruction to liberally construe a pro se plaintiff's pleadings, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), and to "[give] leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated, *Gomez*, 171 F.3d at 795, the Court recommends that Plaintiff be

granted leave to amend his complaint with regard to a *Bivens* claim for money damages against Defendants Comey Vale, Rodriguez, and Venizelos in their individual capacities; his claim for injunctive relief against the FBI, Comey Vale, Rodriguez, and Venizelos; and his § 1983 claim against Schneiderman. The Court further recommends that Plaintiff be reminded that should he amend his *Bivens* claim to seek money damages, sovereign immunity will not be waived under 5 U.S.C. § 702 with regard to his claims for injunctive relief and those claims will be subject to dismissal on sovereign immunity grounds.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's consolidated IFP application be **GRANTED** (Dkt. Nos. 2 and 2-1); and it is

**RECOMMENDED** that Plaintiff's complaints (Dkt. Nos. 1 and 1-1) be **DISMISSED** on initial review under 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) in part on sovereign immunity grounds, in part as frivolous, and in part for failure to state a claim; and it is further

**RECOMMENDED** that Plaintiff's claims against Defendants under the Second, Third, Eighth, Ninth, and Tenth Amendments and under 15 U.S.C. §§ 2, 13; 17 U.S.C. §§ 5, 11; and 18 U.S.C. §§ 241, 242, 245, 247, and 249, and *Bivens* claims against the FBI and against Defendants Comey, Vale, Rodriguez, and Venizelos in their official capacities be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED** that the following claims be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**: (1) *Bivens* claims, if any, for money damages against Comey, Vale, Rodriguez, and Venizelos in their individual capacities; (2) claims for injunctive relief against the FBI, Comey, Vale, Rodriguez, and Venizelos; and (3)

16

Plaintiff's § 1983 claim against Defendant Schneiderman; and it is further

**RECOMMENDED** that in the event Plaintiff is granted leave to amend that he be instructed to include all of his claims in a single amended complaint which shall supercede and replace his two original complaints in their entirety; and that he include in his amended complaint factual allegations describing the incidents of alleged wrongdoing and the role of each named defendant therein sufficiently to allow the Court to assess whether a plausible claim has been stated against them; and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with a copy of the unpublished decision in *Lopez-Media v. Lynch*, No. 1:16-CV-549 (T.B.), 2016 WL 2937479 (S.D. Ohio Wester Division May 20, 2016) in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: September 13, 2016
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2016 WL 2937479
Only the Westlaw citation is currently available.
United States District Court,
S.D. Ohio, Western Division.

Angelica Lopez-Mejia ex rel.,
Unborn Child, Petitioner,
v.
Loretta E. Lynch, et al., Respondents.

Case No. 1:16-cv-549
|
Signed 05/20/2016

**Attorneys and Law Firms**

George Andrew Katchmer, Jr., Yellow Springs, OH, for Petitioner.

## ORDER DENYING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER (Doc. 2)

Timothy S. Black, United States District Judge

**\*1** This civil case is currently before the Court on Petitioner's Motion for a Temporary Restraining Order. (Doc. 2). Following an informal conference with the Court pursuant to S.D. Ohio Civ. R. 65.1, Petitioner filed a supplemental memorandum (Doc. 4).[1] On May 18, 2016, the Court heard oral argument on the motion.

### I. BACKGROUND FACTS

At issue in this case is whether summary removal of an illegal alien violates the constitutional rights of his unborn child who is due to be born on or about July 30, 2016 at University Hospital in Cincinnati, Ohio.

Petitioner's father, Juan De Leon Simon, is currently in the custody of the Department of Homeland Security and will be removed on or around May 19, 2016 from the United States pursuant to an Order of the Immigration Court. Mr. Simon is a citizen of Guatemala and claims that if he returns, he faces death due to political conflict.[2]

Petitioner seeks a declaratory judgment that the federal statutes setting forth the summary removal procedures for undocumented immigrants, *i.e.*, 8 U.S.C. Sections 1182, 1225(b)(1)(A), 1227(a)(1)(B), 1228, 1231, 1326, are unconstitutional as applied to this case. Specifically, Petitioner alleges violations of the Due Process Clause and the Equal Protection Clause and the Eighth, Ninth, and Tenth Amendments.[3]

### II. STANDARD OF REVIEW

"The Sixth Circuit has explained that 'the purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had.' " *Reid v. Hood*, No. 1:10 CV 2842, 2011 U.S. Dist. LEXIS 7631, at *2, 2011 WL 251437 (N.D. Ohio Jan. 26, 2011) (citing *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996)). "The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *Id.* (citing *Motor Vehicle Bd. of Calif. v. Fox*, 434 U.S. 1345, 1347 n.2 (1977)).

**\*2** Petitioner bears the heavy burden of demonstrating his entitlement to a preliminary injunction. An "injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

In determining whether to grant injunctive relief, this Court must weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Id.* These four considerations are factors to be balanced, not prerequisites that must be met. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

### III. ANALYSIS

The Court finds categorically that Petitioner has not evidenced facts sufficient to warrant a temporary restraining order. [4]

#### A. Likelihood of Success on the Merits

Petitioner alleges that the removal procedures are unconstitutional.

##### 1. Eighth Amendment

First, Petitioner alleges that Mr. Simon's removal constitutes a form of cruel and unusual punishment for the unborn child. However, the cruel and unusual punishment clause of the Eighth Amendment provides protection only to persons convicted of a crime. *Whitley v. Albers*, 475 U.S. 312, 318 (1986). Since the unborn child has not been convicted of a crime, his/her Eighth Amendment rights are not implicated. Moreover, the Eighth Amendment prohibition against cruel and unusual punishment does not apply to removal proceedings, because "deportation does not constitute punishment." *Elia v. Gonzales*, 431 F.3d 268, 276 (6th Cir. 2005).

##### 2. Ninth Amendment

Next, Petitioner alleges a violation of Ninth Amendment rights. The Ninth Amendment provides that "[t]he enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people." *U.S. Const. Amend. IX*. This amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law." *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991). Accordingly, Petitioner fails to allege a violation of the Ninth Amendment. [5]

##### 3. Substantive Due Process

Petitioner also alleges that the deportation violates substantive due process. "Substantive due process ... serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996). The Sixth Circuit has set forth a two-part analysis for examining substantive due process claims. *Ziss Bros. Constr. Co., Inc. v. City of Independence, Ohio*, 439 Fed.Appx. 467, 471 (6th Cir. 2011). Under this analysis, the Court must first "determine whether the interest at stake is a protected liberty or property interest" and then "consider whether the deprivation of that interest contravened the notions of due process." *Id.* "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience...or interferes with rights implicit in the concept of ordered liberty.' +" *United States v. Green*, 654 F.3d 637, 652 (6th Cir. 2011). Moreover, "irrespective of the constitutional sufficiency of the processes afforded, government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose." *Bartell v. Lohiser*, 215 F.3d 550, 557-58 (6th Cir. 2000).

**\*3** Assuming Petitioner has a protected interest, [6] he/she does not establish that he/she was deprived of due process.

First, Petitioner has not pleaded sufficient facts to allege that the government engaged in conduct that "shocks the conscience." [7] While it is certainly sad and unfortunate that families are often separated as a result of deportation, it does not "shock the conscience" of the Court. In drafting immigration laws, there is no evidence that Congress intended to injure children. [8] Moreover, removal does not prohibit a child from visiting or even living with his/her parent abroad.

Second, the government has a compelling state interest, based on boarder security and national sovereignty, to enforce its immigration statutes. *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976). "The proposition that the government has a compelling interest in regulating its border hardly needs testimonial documentation. The Court 'has long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.' +" *United States v. Aguilar*, 883 F.2d 662, 695 (9th Cir. 1989) (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210 (1953)).

### *4. Equal Protection*

Finally, Petitioner alleges that summary deportation of his/her father violates the Equal Protection clause. Petitioner references Ohio's domestic and juvenile law which applies the "best interests of the child" standard. However, in a case involving the deportation of a parent, courts have determined that the child is only affected indirectly. *Cabrera-Alvarez v. Gonzales*, 423 F.3d 1006, 1010-11 (9th Cir. 2005). [9] Moreover, it will very rarely be in a child's best interests to have a parent deported. Therefore, if this standard were applied in all removal proceedings indirectly impacting a child, it would create a huge loophole in the law. [10] *See also Lopez v. Franklin*, 427 F. Supp. 345, 349 (E.D. Mich. 1977) ("an argument could be made in every one of these cases that form an objective socio-economic perspective [,] the 'best interests of the child' would be to remain in the United States rather than return to the parents' native land.").

**\*4** Courts have routinely held that Congress has the power to regulate immigration, and "[t]he incidental impact on aliens' minor children caused by the enforcement of duly-enacted conditions on aliens' entrance and residence does not create constitutional problems." *Cervantes v. Immigration & Naturalization Serv.*, 510 F.2d 89, 92 (10th Cir. 1975). [11] The implications of finding a constitutional violation would be significant.

> [D]eportations of parents are routine and do not of themselves dictate family separation. If there were such a right, it is difficult to see why children would not also have a constitutional right to object to a parent being sent to prison or, during periods when the draft laws are in effect, to the conscription of a parent for prolonged and dangerous military service.

*Payne-Barahona v. Gonzales*, 474 F.3d 1, 3 (1st Cir. 2007). [12]

Therefore, Petitioner has not shown a likelihood of success on the merits of his/her constitutional claims. [13]

### *5. Saldana v. Holder*

Approximately one year ago, Judge Rice denied a factually similar motion for temporary restraining order, finding that the minor children had failed to evidence a likelihood of success on the merits. *Saldana v. Holder*, No. 3:15cv105, 2015 U.S. Dist. LEXIS 44023, at \*10 (S.D. Ohio Apr. 2, 2015). Here, Petitioner argues that the court in *Saldana* wrongly interpreted *Hamdi v. Napolitano*, 620 F.3d 615 (6th Cir. 2010). [14] Specifically, in *Hamdi*, the Sixth Circuit left open the possibility that other kinds of remedies might be available to the minor child. *Id.* at 629 n. 16. Judge Rice determined that since the district court lacked authority to review orders of removal by statute, even if it determined that the Saldana's removal violated the constitutional rights of his children, *Hamdi* did not permit the Court to enjoin his removal. *Saldana*, 2015 U.S. Dist. LEXIS 44023 at 3-4 n. 1. Petitioner argues that this reasoning essentially finds that statutory law trumps the Constitution. This Court declines to address potential remedies, because Petitioner failed in the first instance to evidence a constitutional violation.

### B. Irreparable Harm

**\*5** "To demonstrate irreparable harm, the plaintiffs must show that...they will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Harm is irreparable if it cannot be fully compensated by monetary damages. *Overstreet v. Lexington-Fayette Urban County Gov't.*, 305 F.3d 566, 578 (6th Cir. 2002).

If a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated. *Bonnel v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001). *See, e.g., Hillside Productions, Inc. v. Duchane*, 249 F.Supp.2d 880, 900 (E.D. Mich 2003) (where a plaintiff's procedural due process rights were likely violated, a finding of irreparable harm should follow as a matter of law). Here, Plaintiff is unable to show a likelihood of success on his constitutional claim and thus also fails to evidence irreparable harm.

### C. Substantial Harm to Others or the Public

Society has a clear interest in enforcing its immigration statutes. *Coxcom, Inc. v. Chaffee*, 536 F.3d 101, 112 (1st

Cir. 2008) ("[T]he public has an interest in the enforcement of federal statutes."); 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2948.4 (2d ed. 2012) ("The public interest may be declared in the form of a statute"). *See supra* at Section III.A.3.

## IV. CONCLUSION

For these reasons, the Court finds that Petitioner has not met his/her extraordinary burden of establishing

by clear and convincing evidence his/her entitlement to a temporary restraining order. Accordingly, Petitioner's motion for a temporary restraining order (Doc. 2) is **DENIED**.

**IT IS SO ORDERED**.

**All Citations**

Slip Copy, 2016 WL 2937479

Footnotes

1    Respondents rely on their oral argument and written argument in *Saldana ex rel. BNS v. Holder, et al.*, Case No. 3:15cv105 (S.D. Ohio 2015) at Doc. 8.

2    The Complaint fails to provide details about Mr. Simon's situation, but presumably he had a Merits Hearing where he was given the opportunity to present defenses to his removal, such as political asylum and the impending birth of his child. At the Merits Hearing, Mr. Simon would have had the opportunity to bring witnesses to testify on his behalf regarding, among other things, the well-being of his unborn child. *See* 8 U.S.C. § 1229a(b)(1).

3    Counsel for Petitioner previously conceded that there is no private right of action under the Tenth Amendment which simply provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const, Amend. X. *See also Saldana v. Holder*, No. 3:15cv105, 2015 U.S. Dist. LEXIS 44023, at *5-6 n. 2 (S.D. Ohio Apr. 2, 2015). Accordingly, Petitioner fails to state a claim for violation of the Tenth Amendment.

4    As a threshold issue, it is not even clear that an unborn child has standing to proceed in this case. Neither party cited any law addressing the issue.

5    Even if the Ninth Amendment did confer substantive rights, Petitioner's claims lack merit. *See, e.g., Cervantes v. INS*, 510 F.2d 89, 91-92 (10th Cir. 1975) (the "incidental impact on aliens' minor children," caused by the operation of the deportation laws, does not violate the children's Ninth Amendment rights).

6    Petitioner argues that family integrity is a recognized liberty interest. *O'Donnell v. Brown*, 335 F. Supp. 2d 787 (W.D. Mich, 2004) (citing *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000)). However, these cases deal with the removal of children as a result of abuse and neglect, not the removal of a parent pursuant to an Order of the Immigration Court. Undocumented immigrants who are subject to deportation have no protected property or liberty interest in discretionary relief such as cancellation of removal. *Martial-Emanuel v. Holder*, 523 Fed.Appx. 345, 350 (6th Cir. 2013).

7    The United States Supreme Court has defined such behavior as "conduct intended to injure in some way unjustifiable by any government interest." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Conscience-shocking behavior consists of "only the most egregious and arbitrary official conduct." *Assocs. in Obstetrics & Gynecology v. Upper Merion Twp.*, 270 F. Supp. 2d 633, 654 (E.D. Pa. 2003).

8    "[A]ny policy toward aliens is vitally and intricately interwoven with contemporary policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-589 (1952).

9    *See also Application of Amoury*, 307 F. Supp. 213, 216 (S.D.N.Y. 1969) (rejecting equal protection claim of child of deportable alien, finding no "invidious discrimination or arbitrary classification," and noting that "[t]he situation which confronts the infant is due to no act or conduct of the government. It exists because of the conduct of the infant's parents which renders them deportable. The citizen infants of other aliens remain here because their parents are not deportable.").

10   *See, e.g., Marin-Garcia v. Holder*, 647 F.3d 666, 672-74 (7th Cir. 2011) ("If an alien could avoid the consequences of unlawful entry into the United States by having a child, it would create perverse incentives and undermine Congress's authority over immigration matters."); *Ayala-Flores v. INS*, 662 F.2d 444, 446 (6th Cir. 1981) (a finding that a parent's deportation deprives his children of their rights as U.S. citizens "would create a substantial loophole in the immigration laws, allowing all deportable aliens to remain in this country if they bear children here.").

11    *See also Hernandez-Lara v. Holder,* 563 Fed.Appx. 401, 403 (6th Cir. 2014) (rejecting claim that the "exceptional and extremely unusual hardship" showing required for cancellation of removal "adversely affects only those members of the class of United States-citizen children...whose parents are subject to removal from this country," and noting that it is "well-settled" that "a United States-citizen child's constitutional rights are not implicated by the government's otherwise valid decision to deport that child's parents").

12    In fact, it appears that every court that has addressed similar claims has found that "a parent's otherwise valid deportation does not violate a child's constitutional right." *Payne-Barahona,* 474 F.3d at 2 n. 1 (collecting cases from numerous circuits); *Martial-Emanuel,* 523 Fed.Appx. at 350 ("This Circuit and others have held on numerous occasions that the removal of aliens does not violate either their constitutional rights or the constitutional rights of their U.S. citizen family members.").

13    The Court's finding that there is no likelihood of success on the merits is fatal. However, the Court will address the other three factors nonetheless. *Gonzales,* 225 F.3d at 625.

14    In *Hamdi,* the minor child of an illegal alien filed suit, alleging that his mother's removal from this country violated his own rights as a United States citizen. He sought a court order prohibiting her removal. The court held that, although the district court had jurisdiction to consider the question of whether the minor child's constitutional rights would be violated, the court lacked authority to grant the relief requested, because district courts are specifically prohibited by law from reviewing orders of removal. *See* 8 U.S.C. § 1252(g) (Section 1252(g) precludes the federal courts from exercising subject-matter jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action by [DHS] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.").

---

          © 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

**WESTLAW**   © 2016 Thomson Reuters. No claim to original U.S. Government Works.          5